**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **STEVEN EDISON,** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO.  6:23-CV-00512-JDK** |
| | § | |
| **v.** | § | |
| | § | |
| **SMITH COUNTY, TEXAS, BRIAN** | § | |
| **HUTCHINS, DEPUTY, SMITH COUNTY** | § | |
| **SHERIFF'S DEPT.; ROBERT GARCIA,** | § | |
| **DEPUTY, SMITH COUNTY SHERIFF'S** | § | |
| **DEPT.; GRANT YARBEERRA, DEPUTY,** | | |
| **SMITH COUNTY SHERIFF'S DEPT.;** | | |
| **AND LARRY SMITH, SHERIFF, SMITH** | | |
| **COUNTY SHERIFF'S DEPT.;** | | |
| | | |
| **Defendants.** | | |

**REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

On October 16, 2023, Plaintiff Steven Edison, an inmate currently confined at the Texas

Department of Criminal Justice (TDCJ) Goodman Unit, proceeding pro se and *in forma pauperis*,

filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) This case was referred to

the undersigned for findings of fact, conclusions of law, and recommendations for the disposition

of the action. (Doc. No. 3.)

Under 28 U.S.C. § 1915A, a court shall review, before docketing if feasible or in any event

as soon as practicable after docketing, any complaint in a civil action wherein a prisoner seeks

redress from a governmental entity or officer, or employee of a governmental entity. During its

review, the court must identify cognizable claims or dismiss the complaint or any portion thereof

if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted.

1

*See* 28 U.S.C. § 1915A(b)(1). Section 1915A applies regardless of whether the plaintiff has paid a filing fee or is proceeding IFP. *See Martin v. Scott*, 156 F.3d 578, 579 (5th Cir. 1998) ("The plain language of [§ 1915A] . . . indicates that it applies to any suit by a prisoner regardless of whether that prisoner is or is not proceeding IFP.").

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *See Montoya v. FedEx Ground Packaging Sys. Inc.*, 614 F.3d 145, 149 (5th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim has factual plausibility when the pleaded factual content allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *See Hershey v. Energy Transfer Partners, L.P.*, 610 F.3d 239, 245 (5th Cir. 2010); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard is not akin to a probability standard; rather, the plausibility standard requires *more than the mere possibility* that the defendant has acted unlawfully. *Twombly*, 550 U.S. at 556 (emphasis supplied).

All well-pleaded facts are taken as true, but the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *See Whatley v. Coffin*, 496 F. App'x 414 (5th Cir. 2012) (unpublished) (citing *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Crucially, while the federal pleading rules do not require "detailed factual allegations," the rule does "demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. *Id.*

### A. Plaintiff's Complaints

In his original complaint, Plaintiff alleged that on April 22, 2022, he was home alone at his home in Flint, Texas, and attempted suicide by overdosing on Xanax. (Doc. No. 1, at 6.) Plaintiff alleged that Defendants Brian Hutchins, Robert Garcia, and Grant Yarbeera, showed up at the scene of his overdose, arrested him for "family violence", denied him proper medical care, took him to jail, and assaulted him. (Doc. No. 1, at 6.)  Specifically, with respect to the alleged "assault," Plaintiff alleges that Defendant Hutchin's body cam shows a 6 to 8 second video of Plaintiff laying on the floor in a jail cell, handcuffed, screaming "my wrist-my wrist" while Plaintiff was experiencing an overdose and should have been at the hospital. *Id.* at 2.

Because it was not clear whether or where Plaintiff was incarcerated at the time, the court reviewed the pleadings pursuant to 28 U.S.C. § 1915(e)(2). The court explained to Plaintiff that his factual allegation in his original pleading were insufficient to state a claim for relief, specifically identified the deficiencies of those claims, and provided Plaintiff an opportunity to amend. (Doc. No. 4.) On January 18, 2024, Plaintiff filed an amended complaint. (Doc. Nos. 7, 7-1, 7-2, 7-3.)

Plaintiff's amended complaint reiterates his allegations that on April 22, 2022, he attempted suicide by overdose of prescription medicine, that he was found unconscious by Dr. Michelle Santos who called his mother to the scene, and that he was generally lost, disoriented, and confused. (Doc. No. 7, at 9.) Plaintiff alleges that Dr. Santos called 911 and that three deputies showed up and arrested him for family violence, ignored that he had overdosed even though they knew he had overdosed, and took him to jail. *Id.* Plaintiff alleges that he was taken to Smith County Jail, where he was medically cleared to be booked, and that he was placed in a suicide cell as well as a suicide smock. *Id.* at 10. Plaintiff states that he was still overdosing in the cell and was not in control of his actions when he was allegedly assaulted by being thrown to the floor still handcuffed

behind his back. *Id.* Plaintiff concedes a report indicated that he was unmanageable and hit his head on a cement wall. *Id.* Plaintiff contends again that the body camera of Deputy Hutchins shows the incident, and alleges that he was not given proper medical care. *Id.* Plaintiff further alleges that the Smith County Sheriff's Department was not qualified to medically clear someone who was thought to have overdosed. *Id.* Plaintiff states that he was bonded out of Smith County Jail on April 24, 2022. (Doc. No. 7-1, at 1.) Plaintiff includes images from April 24, 2022, allegedly showing bruises on his left hip area from the alleged use of force. *Id.* at 28–31. Plaintiff further submits an affidavit of Michelle Santos discussing the events of the overdose, attesting that Plaintiff was not mentally stable and needed medical attention, and requesting that the charges be dropped. *Id.* at 21–27. Plaintiff also submits his psychiatric assessments by Dr. William Rogers, discussing his prescriptions and what had allegedly occurred on April 22, 2022. *Id.* at 18–20.

Plaintiff states that he was in Smith County Jail again from January 9, 2023 to April 28, 2023, and that he started a grievance process for the above mentioned claims, but that he was told his grievance was meritless because the conduct did not occur in Smith County Jail because he was arrested at home. *Id.* at 3. Plaintiff includes letters complaining of the incidents that he sent to Lieutenant Strickland as well as personnel complaints sent to the Sheriff of Smith County, Larry Smith. *Id.* at 5–17, 32–33. Plaintiff sues Lt. Strickland, Captain Martin, Seargent Saxxon, and Sheriff Larry Smith for due process violations for not appropriately responding to his grievances, not allowing him to exhaust his grievance procedures, and otherwise not responding to his complaints. (Doc. No. 7, at 7–8.)

Plaintiff also states new claims against his court appointed attorney, John Jarvis, for violations of the Fifth, Sixth, and Fourteenth Amendments. (Doc. No. 7, at 5–6.) Factually, these allegations appear to be based on the fact that Plaintiff was found incompetent by Dr. Tom Proctor

in March 2023, but Plaintiff alleges that he was competent, and this conclusion was not valid. *Id.* Plaintiff states that he also had a competency evaluation by a TDCJ psychiatrist in July 2023 and that he mailed these results to attorney Jarvis, but they were ignored. *Id.* Plaintiff then states that he plead guilty to a misdemeanor in Cherokee County on November 9, 2023. *Id.* at 6.

In sum, Plaintiff seeks termination of all employees involved and monetary relief in the amount of $5,000,000. *Id.* at 9.

### a. Plaintiff's Claims

Neither of Plaintiff's complaints state whether he intends to sue the named individuals in their official capacities. However, to the extent that Plaintiff intended to sue Defendants in their official capacities, his claims are subject to dismissal.

### i. Official Capacity Claims

To the extent that Plaintiff's complaint can be liberally construed to sue the named Defendants in their official capacities as employees of Smith County, "[w]hen a plaintiff sues a county or municipal official in [his] official capacity, the county or municipality is liable for the resulting judgment and, accordingly," the suit is treated as a suit against the county or the municipality. *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir.1996). *See Brooks v. George County, Miss.*, 77 F.3d 834, 841 (5th Cir.1996) (holding that a suit against a sheriff in his official capacity is treated as a claim against the county). A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978); *see also Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) ("[M]unicipal liability under section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) violation

of constitutional rights whose moving force is the policy or custom.") (internal citations omitted).
To be successful on a claim for violation of § 1983, the official policy or custom must cause the
constitutional violation. *Id.* at 692. However, a municipality may not be liable under § 1983 on a
*respondeat superior* theory; in other words, a government entity may not be liable under § 1983
simply by employing a tortfeasor. *Id.* at 691.

In this regard, although Plaintiff purports to sue Smith County (Doc. No. 7, at 3), he has
not stated any facts against Smith County that would plausibly give rise to a claim. Plaintiff's
allegations do not include any official policy of Smith County that caused a constitutional
violation. Indeed, Plaintiff's allegations do not mention a policy at all, nor do they identify a
policymaker. Plaintiff's factual allegations with respect to the county suggest that the Smith
County Sheriff's Office was not qualified to medically clear a victim of overdose. (Doc. No. 7, at
10.) But these allegations do not identify any official policy of the county, nor do they suggest a
constitutional violation occurred. Plaintiff further does not identify any of the individual
Defendants as policymakers for the county. Moreover, Plaintiff cannot simply sue Smith County
for the actions of its employees as alleged in his complaint. *Monell*, 436 U.S. at 691. Even liberally
construing these allegations, they do not state a claim for municipal liability under § 1983. As such,
Plaintiff's claims against Smith County, including any official capacity claims against Defendants,
should be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b).

### ii.  Individual Capacity Claims

### 1.  Defendant Brian Hutchins

Plaintiff's factual allegations against Defendant Brian Hutchins appear to be related to: (1)
Plaintiff's arrest at his home; and (2) use of force in the Smith County Jail. Plaintiff's allegations,
though not abundantly clear, imply that Deputy Hutchins was one of three officers to be called to

his house on April 22, 2022, who arrested him for family violence and took him to jail. (Doc. No. 7, at 9; Doc. No. 7-1, at 12.) Plaintiff alleges that an arrest report done by Deputy Hutchins was "falsified and not correct" because it states that Plaintiff became unmanageable and hit his head against the wall. (Doc. No. 7-1, at 9.) He further alleges that Defendant Hutchin's body camera shows an assault where Plaintiff was thrown to the floor still handcuffed while in his jail cell screaming "my wrist my wrist." (Doc. No. 7, at 10; Doc. No. 7-1, at 14.) Plaintiff alleges that he was "physically assaulted" by Defendant Hutchins. (Doc. No. 7-1, at 3.) Construed liberally, these allegations appear to state a claims pursuant to 42 U.S.C. § 1983 for an unlawful seizure pursuant to the Fourth Amendment, fabrication of evidence under the Fourteenth Amendment, deliberate indifference, and for excessive use of force in violation of the Fourteenth Amendment.[1]  In the prior order to amend, the court explained these allegations to Plaintiff and included the standards for pleading as a guide to amending his complaint. (Doc. No. 4.) Plaintiff's amended complaint, however, does not overcome the deficiencies of his original.

### a.  Unlawful Seizure

Plaintiff's allegations against Defendant Hutchins for false arrest fail to state a claim. "[I]n order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *see also Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001) (internal quotation marks omitted) ("The constitutional tort of false arrest ... require[s] a showing of no probable cause."). As discussed, Plaintiff alleges that Deputy Hutchins was one of three officers to be called to his house on April 22, 2022, who arrested him for family violence and took him to jail, and that an

---

[1] The Eighth Amendment protects convicted felons, whereas pretrial detainees are protected by the Fourteenth Amendment Due Process Clause "from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 1871 n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

arrest report done by Deputy Hutchins was "falsified and not correct" because it states that Plaintiff became unmanageable and hit his head against the wall. (Doc. No. 7-1, at 9, 12.)

As an initial matter, Plaintiff has not alleged an arrest without probable cause. According to Plaintiff's own allegations, Dr. Santos found him unresponsive after his attempted overdose, called police to the scene, and informed them that he was angry, broke her property, and "bawled" up a fist and hit her. (Doc. No. 7-1, at 12–13.) It was on these grounds that Plaintiff admits Defendant Hutchins arrested him for domestic violence and took him to jail. *Id.* Taking these factual allegations as true, Defendant Hutchins had probable cause for arrest. As such, these allegations fail to state a claim for unlawful arrest pursuant to the Fourth Amendment.

### b.  Fabrication of Arrest Report

Plaintiff also alleges that Defendant Hutchins falsified the arrest report. To succeed on a fabrication-of-evidence due process claim under the Fourteenth Amendment, Plaintiff must allege that (1) Deputy Hutchins fabricated evidence, (2) "for the purpose of falsely obtaining a charge," and (3) "that the evidence influenced the decision to charge" Plaintiff. *See Cole v. Hunter*, 497 F. Supp. 3d 172, 190 (N.D. Tex. 2020). A deliberately inaccurate police report may violate the Constitution under this framework. *See, e.g., Morgan v. Chapman*, No. 6:17-CV-00004, 2022 WL 4367057, at *15–16 (S.D. Tex. Sept. 20, 2022) (finding that plaintiff stated a plausible claim for fabricated evidence based on claim that investigator "knowingly and deliberately compiled an inaccurate report," which "was the catalyst for [the plaintiffs] indictment, arrest, and prosecution"). That said, "there is no right to a completely accurate police report" (*Smith v. Patri*, 99 F. App'x 497, 498 (5th Cir. 2004) (per curiam)), and mere "disagreement with the information in the reports and with the officers' version of events is not sufficient to show that the officers falsified their reports." *Ballard v. Hedwig Vill. Police Dep't*, 408 F. App'x 844, 846 (5th Cir. 2011) (per curiam).

Here, Plaintiff alleges that an arrest report done by Deputy Hutchins was "falsified and not correct" because it states that Plaintiff became unmanageable and hit his head against the wall. (Doc. No. 7-1, at 9.) However, as discussed, Plaintiff's own allegations concede that both Dr. Santos and his mother found him to be unmanageable at the scene of the arrest, having broken property and having physically assaulted someone. (Doc. No. 7-1, 12–13.) Plaintiff notes that it was Dr. Santos who bonded him out of jail the very next day on April 23, 2022 for this arrest. *Id.* at 13. Plaintiff's allegations further include an affidavit of Dr. Santos that details an encounter between her son and Plaintiff where her son was injured when Plaintiff was belligerent and mentally unwell, and includes her request that the charges against Plaintiff be dropped. *Id.* at 24–27. Thus, Plaintiff's own allegations concede that Deputy Hutchins did not falsify a report by stating that Plaintiff was unmanageable in order to bring a charge. Further, as alleged, the charges were dropped at the hest of Dr. Santos who bailed him out of jail. These allegations, construed liberally, do not state a claim for a violation of the Fourteenth Amendment by Defendant Hutchins for falsifying an arrest report.

### c. Deliberate Indifference

Construed liberally, Plaintiff's allegations also indicate that Defendant Hutchins was deliberately indifferent to his serious medical needs because he knew that Plaintiff was overdosing, but he transported him to jail instead of the hospital.[2] "Constitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dall. Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth*, 74 F.3d 633, at 644–45 (5th Cir. 1996)). The "deliberate

---

[2] The court previously stated (Doc No. 4), and still believes that such allegations should be characterized as a Fourth Amendment violation for unlawful seizure. However, for the reasons discussed, Plaintiff has not stated an unlawful seizure claim against Defendant Hutchins.

indifference" standard applies to a pretrial detainee's claims involving the denial of medical care under § 1983. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 636 (5th Cir. 1996). Under this standard, an episodic act or omission by a governmental employee does not violate a pretrial detainee's constitutional right to medical care unless the pretrial detainee demonstrates that the employee acted or failed to act with subjective deliberate indifference to his serious medical needs. *Id.* at 643, 647–48. "'For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate indifference "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Here, Plaintiff's allegations primarily relate to his contention that Deputy Hutchins knew that Plaintiff was overdosing because Plaintiff's mother told him that he was "overdosed" and needed medical attention. (Doc. No. 7-1, at 12.) The fact that Deputy Hutchins knew that Plaintiff had "overdosed" alone does not suggest that Deputy Hutchins knew that a substantial risk of serious harm to Plaintiff existed. Indeed, nothing in the factual allegations suggests that Deputy Hutchins was otherwise informed of some serious medical need, other than Plaintiff's loose references that his mother and Dr. Santos stated that he needed medical attention. Plaintiff fails to allege how transporting him to jail instead of the hospital resulted in substantial harm to him. Mere negligence on the part of a governmental employee does not constitute deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991); *see also Trevino v. Hinz*, 751 F. App'x. 551, 554 (5th Cir. 2018) (per curiam) ("We doubt that Plaintiffs have alleged facts giving rise to deliberate indifference as to [officers]…Even read favorably to Plaintiffs, their allegations may depict

negligence on the officers' part in not initially realizing the gravity of [Plaintiff's] condition and in not calling an ambulance sooner."). Taking Plaintiff's allegations as true that Defendant Hutchins failed to transport Plaintiff to the hospital instead of the jail, the allegations amount to, at most, negligence.

Further although Plaintiff makes references to an alleged "defective" intake policy of Smith County Jail, Plaintiff does not allege facts to suggest that Smith County had a larger pattern or policy of failing to provide medical care to inmates. Again, Plaintiff's allegations relate to his contention that he should have been taken to the hospital instead of jail and that an RN is not medically qualified to do intake of an overdosing individual. (Doc. No. 7-1, at 15.) Plaintiff appears to further complain that he was placed in a suicide cell in suicide smock upon intake (Doc. No. 7-1, at 9). But these allegations do not establish any pattern or policy of the county, as they relate only to Plaintiff's intake to Smith County Jail when he was arrested. As such, the pleadings amount to no more than an isolated incident. Further, Plaintiff alleges no facts that the county or its policymakers were on actual or constructive notice that an omission or defect existed in the county's policies and procedures related to overdosing inmates that could cause its staff to violate inmates' constitutional rights. Moreover, to the extent Plaintiff is challenging his placement in a suicide cell and suicide smock, Plaintiff's own allegations are inconsistent as he concedes that he was booked after a suicide attempt. (Doc. No. 7, at 9.)

For these reasons, Plaintiff has failed to state a constitutional violation for deliberate indifference under either theory.

### d.  Excessive Use of Force

Plaintiff further alleges that Defendant Hutchins used excessive force when he physically assaulted Plaintiff in his jail cell. A pretrial detainee's rights are protected by the Fourteenth

Amendment's Due Process Clause which protects a detainee from "excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395, n.10 (1989) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979)). The Supreme Court has held that the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97. The court considers the following non-exclusive factors regarding the reasonableness of the use of force:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397; *Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 317 (5th Cir. 2021), *cert. denied*, 211 L. Ed. 2d 258, 142 S. Ct. 438 (2021). In determining objective reasonableness, "a court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (alterations in original) (quoting *Bell*, 441 U.S. at 540 (1979)). Notably, although Plaintiff alleges that he was physically assaulted by Defendant Hutchins (Doc. No. 7-1, at 14), he does not specify that it was Defendant Hutchins who allegedly threw him to the floor, even though the court previously asked him to specify this information. (Doc. No. 7, at 10.) Rather, Plaintiff alleges only that Defendant Hutchin's body camera shows a 6-8 second video of Plaintiff lying on the floor of the central jail, handcuffed behind his back, while he was screaming in pain about his wrist and still overdosing. (Doc. No. 1, at 2.) With respect to this incident, Plaintiff's allegations also concede that at the time of the alleged use of force he was "not in control of his actions" (Doc. No. 7, at 10), that he was "unmanageable" (Doc. No. 7-1, at 6), and that he

had hit his head against the wall (Doc. No. 7-1, at 9). Plaintiff attaches pictures of an approximately quarter sized bruise on his left hip alleged to have occurred from the use of force. (Doc. No. 7-1, at 28–29.)

Construing the allegations liberally to infer that it was Defendant Hutchins who threw Plaintiff to the floor in his jail cell, the allegations nonetheless do not support a conclusion that the alleged conduct was objectively unreasonable. Plaintiff concedes that the incident lasted for no more than 6-8 seconds and that he was noted to be unmanageable at the time and had incurred a self-inflicted injury by hitting his head on a cement wall. (Doc. No. 1, at 2; Doc. No. 7-1, at 14.) Further, according to Plaintiff, the use of force resulted in no more than bruising for injury. (Doc. No. 7-1, 28–29.) Taking these allegations as true, the use of force alleged was not objectively unreasonable. *See Kingsley*, 576 U.S. at 396–99.

For the reasons stated herein, Plaintiff's § 1983 claims against Defendant Hutchins should be dismissed with prejudice for failure to state a claim under 28 U.S.C. §1915A(b).

## 2. Defendant Robert Garcia

Plaintiff's allegations as to Defendant Robert Garcia are simply that he was one of three arresting officers who denied him proper medical care by taking him to jail instead of calling for an ambulance. (Doc. No. 7, at 9; Doc. No. 7-1, at 5.) Plaintiff does not allege that Defendant Garcia had involvement in his intake to jail or in using force against him once at the jail.

With respect to Plaintiff's factual allegations against Defendant Garcia, they can best be characterized as claims for unlawful arrest in violation of the Fourth Amendment and deliberate indifference in violation of the Fourteenth Amendment. The factual allegations are identical with respect to those against Defendant Hutchins in this regard. These allegations similarly fail to state a claim.

With respect to unlawful arrest, for the reasons explained, Plaintiff has not alleged an arrest without probable cause, and as such, Plaintiff has failed to state a claim against Defendant Garcia for a violation of the Fourth Amendment. *Parm*, 513 F.3d at 142. With respect to deliberate indifference, Plaintiff alleges that Defendant Garcia knew that Plaintiff was overdosing because Plaintiff's mother told him that he was "overdosed" and needed medical attention at the scene of the arrest. (Doc. No. 7-1, at 12.) The fact that Defendant Garcia knew that Plaintiff had "overdosed" alone does not suggest that he knew that a substantial risk of serious harm to Plaintiff existed. Indeed, nothing in the factual allegations suggests that Defendant Garcia was otherwise informed of some serious medical need, other than Plaintiff's loose references that his mother and Dr. Santos stated that he needed medical attention. Plaintiff fails to allege how transporting him to jail instead of the hospital resulted in substantial harm to him. Mere negligence on the part of a governmental employee does not constitute deliberate indifference. *Wilson*, 501 U.S. at 305; *Trevino*, 751 F. App'x. at 554. Taking Plaintiff's allegations as true that Defendant Garcia failed to transport Plaintiff to the hospital instead of the jail, the allegations amount to, at most, negligence.

For the reasons stated herein, Plaintiff's § 1983 claims against Defendant Garcia should be dismissed with prejudice for failure to state a claim under 28 U.S.C. §1915A(b).

### 3. Defendant Grant Yarbeera

Plaintiff's allegations as to Defendant Grant Yarbeera are also simply that he was one of three arresting officers who denied him proper medical care by taking him to jail instead of calling for an ambulance. (Doc. No. 7, at 9; Doc. No. 7-1, at 5.) Plaintiff does not allege that Defendant Yarbeera had involvement in his intake to jail or in using force against him once at the jail.

With respect to Plaintiff's factual allegations against Defendant Yarbeera they can best be characterized as claims for unlawful arrest in violation of the Fourth Amendment and deliberate

indifference in violation of the Fourteenth Amendment. The factual allegations are identical with respect to those against Defendant Hutchins and Defendant Garcia in this regard. These allegations similarly fail to state a claim.

With respect to unlawful arrest, for the reasons explained, Plaintiff has not alleged an arrest without probable cause, and as such, Plaintiff has failed to state a claim against Defendant Yarbeera for a violation of the Fourth Amendment. *Parm*, 513 F.3d at 142. With respect to deliberate indifference, Plaintiff alleges that Defendant Yarbeera knew that Plaintiff was overdosing because Plaintiff's mother told him that he was "overdosed" and needed medical attention at the scene of the arrest. (Doc. No. 7-1, at 12.) The fact that Defendant Yarbeera knew that Plaintiff had "overdosed" alone does not suggest that he knew that a substantial risk of serious harm to Plaintiff existed. Indeed, nothing in the factual allegations suggests that Defendant Yarbeera was otherwise informed of some serious medical need, other than Plaintiff's loose references that his mother and Dr. Santos stated that he needed medical attention. Plaintiff fails to allege how transporting him to jail instead of the hospital resulted in substantial harm to him. Mere negligence on the part of a governmental employee does not constitute deliberate indifference. *Wilson*, 501 U.S. at 305; *Trevino*, 751 F. App'x. at 554. Taking Plaintiff's allegations as true that Defendant Yarbeera failed to transport Plaintiff to the hospital instead of the jail, the allegations amount to, at most, negligence.

For the reasons stated herein, Plaintiff's § 1983 claims against Defendant Yarbeera should be dismissed with prejudice for failure to state a claim under 28 U.S.C. §1915A(b).

### 4.  Defendant Larry Smith

With respect to Defendant Larry Smith, Plaintiff alleges that Defendant Larry Smith violated his due process rights because he sent written letters to him in February 2023 stating his claims and Defendant Smith ignored them. (Doc. No. 7, at 8.)

As an initial matter, these allegations are far too conclusory and do not state a constitutional violation by Defendant Smith. Generally, an inmate does not have a constitutional right to a grievance procedure. *Staples v. Keffer*, 419 F. App'x 461, 463 (5th Cir. 2011) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)). Further, there is no federally protected liberty interest in having grievances resolved to an inmate's satisfaction. *See Geiger*, 404 F.3d at 374 (because "[plaintiff] does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction ... any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Plaintiff's attenuated allegations regarding Defendant Smith not responding to a letter regarding his claims therefore do not state a claim for a due process violation. Moreover, Plaintiff's pleaded allegations are once again inconsistent. Although Plaintiff contends that a letter was ignored by Defendant Smith as the basis of a due process violation, Plaintiff also states that on October 30, 2023, his mother informed him that he received a letter from Defendant Larry Smith, suggesting Defendant Smith did respond to Plaintiff's letter. (Doc No. 7-1, at 10.)

Additionally, to the extent that Plaintiff intended to sue Defendant Smith in his role as Sheriff for the actions of the other named Defendants as discussed herein, the doctrine of *respondeat superior* does not apply to § 1983. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990); *Monell*, 436 U.S. at 691. Under 42 U.S.C. § 1983, supervisory officials are not liable for a subordinate's actions on any vicarious liability theory. As such, any such claims against Defendant Smith fail on the pleadings.

For these reasons, Plaintiff's claims against Defendant Smith should be dismissed with prejudice for failure to state a claim under 28 U.S.C. §1915A(b)

### 5. Defendant Lt. Strickland

Plaintiff sues Defendant Strickland for allegedly violating due process in the handling of Plaintiff's claim. (Doc. No. 7, at 7.) Plaintiff states that he emailed Defendant Strickland all of the evidence regarding his claim and that on September 18, 2023, he received a letter stating that his claims are invalid and no investigation will be done. *Id.* Plaintiff makes several accusations regarding Defendant Strickland mishandling his claims by ignoring his alleged use of force, how the medical staff were encountered, and threatening to sue him for a violation of due process. (Doc. No. 7-1, at 7–8.)

Here, Plaintiff effectively challenges Defendant Strickland's handling of his grievances as a violation of due process. But, as discussed, Plaintiff has no due process right to an effective prison grievance system, and "any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger*, 404 F.3d at 374; *see also Schwarzer v. Wainwright*, 810 F. App'x 358, 360 (5th Cir. 2020) ("Schwarzer cannot demonstrate that prisoners have a constitutional right to a grievance system."). Therefore, Plaintiff has failed to allege a constitutional violation by Defendant Strickland.

For these reasons, Plaintiff's claims against Defendant Strickland should be dismissed with prejudice for failure to state a claim under 28 U.S.C. §1915A(b).

### 6. Defendant Captain Martin

As to Defendant Martin, Plaintiff alleges that Defendant Martin has violated his right to due process by refusing to allow Plaintiff access to the grievance procedure on the kiosk computer system. (Doc. No. 7, at 7.) Therefore, Plaintiff alleges that Defendant Martin prohibited him from

exhausting all grievance procedures. *Id.* Plaintiff also alleges that Defendant Martin did not satisfactorily respond to his grievances because he informed Plaintiff that he was brought to jail, detoxed, and housed without incident, and that he was medically cleared by a nurse. (Doc. No. 7-1, at 4.) Because Plaintiff has no constitutional right to a grievance system, these allegations are subject to dismissal. *Schwarzer*, 810 F. App'x at 360. Moreover, Plaintiff does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. *Geiger*, 404 F.3d at 374.

For these reasons, Plaintiff's claims against Defendant Martin should be dismissed with prejudice for failure to state a claim under 28 U.S.C. §1915A(b).

### 7.  Defendant Sergeant Saxxon

Similarly, as to Defendant Saxxon, Plaintiff alleges that Defendant Saxxon has violated his right to due process by refusing to allow Plaintiff access to the grievance procedure on the kiosk computer system. (Doc. No. 7, at 78) Therefore, Plaintiff alleges that Defendant Saxxon prohibited him from exhausting all grievance procedures. *Id.* Plaintiff further complains about Defendant Saxxon's responses to his grievances, stating that his claims were meritless and did not happen inside Smith County Jail. (Doc. No. 7-1, at 4.) Because Plaintiff has no constitutional right to a grievance system, these allegations are subject to dismissal. *Schwarzer*, 810 F. App'x at 360. Moreover, Plaintiff does not have a federally protected liberty interest in having his grievances resolved to his satisfaction. *Geiger*, 404 F.3d at 374.

For these reasons, Plaintiff's claims against Defendant Saxxon should be dismissed with prejudice for failure to state a claim under 28 U.S.C. §1915A(b).

### 8.  Defendant John Jarvis

Plaintiff also alleges a claim against court-appointed counsel, John Jarvis, for ineffective assistance of counsel in violation of the Sixth Amendment. (Doc. No. 7, at 5–6.) A civil rights claim based on factual allegations that are necessarily inconsistent with the validity of a conviction that has not been reversed on direct appeal, expunged by executive order, or otherwise declared invalid by a state tribunal or federal court should be dismissed as frivolous. *See Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994); *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) ("A § 1983 claim which falls under the rule in *Heck* is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." (citation omitted)); *see also DeLeon v. City of Corpus Christi*, 488 F.3d 649, 652 (5th Cir. 2007) ("The *Heck* court held that a civil tort action, including an action under section 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments." (citing *Heck*, 512 U.S. at 486)). Because Plaintiff fails to show that his conviction has been reversed, expunged, or otherwise declared invalid, a civil claim based on a theory that his criminal trial counsel was constitutionally ineffective is currently barred by *Heck. See, e.g., Mount v. Wakefield*, 738 F. App'x 280, 280–81 (5th Cir. 2018) (per curiam) (affirming dismissal of a § 1983 claim based on alleged violation of the Sixth Amendment right to effective assistance of counsel as barred by *Heck*). Accordingly, Plaintiff's claim against John Jarvis for ineffective assistance of counsel should be dismissed with prejudice to it being asserted again until the *Heck* conditions are met.

Moreover, even if Plaintiff were able to meet the conditions of *Heck*, the conduct of a private person like Defendant Jarvis, even as court-appointed counsel, does not qualify him as a state actor such that he could be subject to suit under 42 U.S.C. § 1983. *See Briscoe v. LaHue*, 460 U.S. 325, 329 (1983); *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988) ("private attorneys, even court-appointed attorneys, are not official state actors, and generally are

not subject to suit under section 1983"). Thus, even if not barred by *Heck*, Plaintiff's claim against Defendant Jarvis for violations of the Sixth Amendment pursuant to § 1983 could not stand. As such, Plaintiff's claims against Defendant Jarvis should be dismissed with prejudice.

## CONCLUSION

Having conducted screening pursuant to § 1915A, the court finds that this action should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). As Plaintiff has already been given an opportunity to amend and has pleaded his "best case," any further amendment would be futile. *See Norman v. Tex. Court of Criminal Appeals*, 582 F. App'x 430, 431 (Mem) (5th Cir. 2014) (unpublished); *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). The dismissal of this action on these recommendations counts as a qualifying dismissal under 28 U.S.C. § 1915 and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996) *abrogated in part on other grounds by Coleman v. Tollefson*, 575 U.S. 532, 534–41 (2015).

Accordingly, it is **RECOMMENDED** that this case be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). Plaintiff's claims against Defendants should be dismissed with prejudice pursuant to 28 U.S.C. §1915A(b).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So **ORDERED and SIGNED** this 20th day of February, 2024.

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE